UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-21589-CV-SINGHAL
(18-20700-CR-SINGHAL)
MAGISTRATE JUDGE REID

OZIE LEE HOLMES, JR.,

      Movant,

v.

UNITED STATES OF AMERICA,

      Respondent.

_____/

## REPORT OF MAGISTRATE JUDGE

    This cause is before the court on Movant's Amended Motion to Vacate pursuant to 28 U.S.C. § 2255 ("Amended Motion") [CV-ECF No. 8][1] and Memorandum of Law ("Memorandum") [CV-ECF No. 9]. This matter has been referred to the Undersigned for consideration and report pursuant to 28 U.S.C. § 636 and S.D. Fla. Admin. Order 2019-02. [CV-ECF No. 2].

    Movant, Ozie Lee Holmes, Jr. ("Holmes"), pled guilty to possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1), and conspiracy to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841 and 846 in **Case No. 18-20700-CR-SINGHAL**.[2] In his Amended Motion, he raises four claims, including that his sentencing counsel was ineffective for failing to appeal of his judgment

---

[1] Citations to [CV-ECF] refer to docket entries in this civil case, Case No. 20-21589-CV-SINGHAL. Citations to [CR-ECF] refer to docket entries in Movant's underlying criminal case, Case No. 18-20700-CR-SINGHAL.

[2] This case and Movant's underlying criminal case were reassigned from Judge Ursula Ungaro to Judge Raag Singhal on June 2, 2021 and June 11, 2021, respectively. [CV-ECF No. 41]; [CR-ECF No. 258].

of conviction. An evidentiary hearing was held on this claim. *See* [ECF No. 46]. After consideration of the testimony, the evidence presented at the evidentiary hearing, and review of the pertinent portions of the record in both this matter and the underlying criminal case, it is **RECOMMENDED** that Movant's Amended Motion be **DENIED** on the merits.

## I. Movant's Claims

In Movant's § 2255 Amended Motion, he raises the following grounds for relief:

1.    Ineffective assistance of sentencing counsel, Diego Weiner, for failing to file an appeal. [ECF No. 8 at 4].

2.    Ineffective assistance of sentencing counsel for failing to object to the Presentence Report ("PSI") designating Movant as an armed career criminal pursuant to the Armed Career Criminal Act. [*Id.* at 5].

3.    Ineffective assistance of sentencing counsel for failing to object to Movant's designation as a career offender in the Presentence Report. [*Id*. at 7].

4.    Ineffective assistance of plea/trial counsel, Roderick Vereen, for failing to inform Movant that the alleged "second plea" offer would expose him to a greater sentence than the "first." [*Id.* at 8].

## II. Procedural Background

A)   <u>Indictment</u>

On August 23, 2018, a grand jury in the Southern District of Florida returned an indictment, charging Movant with: (Count One) – conspiracy to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841 and 846; (Count 7) – possession with intent to distribute 28 grams or more of a mixture and substance containing a detectable amount of crack cocaine, a mixture and substance containing a detectable amount of powder cocaine, and a mixture and substance containing a detectable amount of marijuana, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; (Count 10) – possession with intent to distribute 28 grams or more of a mixture and substance containing a detectable amount of crack cocaine on March 27, 2018,

in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; (Count 11) – possession with intent to distribute 28 grams or more of a mixture and substance containing a detectable amount of crack cocaine on May 11, 2018, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; (Count 12) – possession with intent to distribute 28 grams or more of a mixture and substance containing a detectable amount of crack cocaine on May 22, 2018, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; (Count 13) – possession with intent to distribute 28 grams or more of a mixture and substance containing a detectable amount of crack cocaine on June 2, 2018, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and (Count 17) – possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1), and 2 . [CR-ECF No. 13].

B) <u>Plea Agreement</u>

While represented by Attorney Roderick Vereen ("Attorney Vereen"), Holmes entered into a written plea agreement. [CR-ECF No. 100]. He pled guilty to (Count 1) – conspiracy to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. § 846; and (Count 17) – possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1), in exchange for the government's dismissal of the other counts charged in the indictment. [*Id*. ¶¶ 1-2]. Title 18 U.S.C. § 924(e)(1), known as the Armed Career Criminal Act (the "ACCA"), imposes a mandatory minimum 15-year sentence on anyone convicted of a § 922(g) violation who has three prior convictions for either a violent felony or serious drug offense.

In the plea agreement, the Government agreed to recommend a sentence at the low end of Holmes' guidelines range and "not seek any additional enhancements to the applicable guidelines range pursuant to [U. S. Sentencing Guidelines Manual] §§ 2D1.1 or 2K2.1 of the Sentencing Guidelines." [*Id*.]. However, the agreement noted that "this provision [did] not relate to any

applicable recidivism enhancements or mandatory minimum sentences pursuant to § 4B1.1 (Career Offender) or the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1)." [*Id*. ¶ 9(c)]. The agreement further specified that Holmes could "not withdraw his plea based on the Court's decision not to accept [his or the Government's] sentencing recommendation." [*Id*.].

The plea agreement noted that the mandatory minimum term of imprisonment for Count 1 was 10 years and the mandatory minimum term of imprisonment for Count 17 was 15 years imprisonment. [*Id*. § 4].

Finally, the plea agreement contained an appeal waiver, pursuant to which Holmes waived his right "to appeal the manner in which the sentence was imposed," unless his sentence exceeded the maximum permitted by statute or was a result of an upward departure or variance from the advisory guideline range. [*Id*. ¶ 13]. In the agreement, Holmes acknowledged that he had discussed the appeal waiver with his attorney and that his waiver was "knowing and voluntary." [*Id*.]. He signed the plea agreement on December 20, 2018. [*Id*. at 6].

C) Factual Proffer

Holmes signed the factual proffer the same day. [CR-ECF No. 101]. According to the factual proffer, in June 2017, law enforcement began investigating a network of drug distributors operating in Miami, Florida. [*Id*. at 1]. The investigation revealed that, between June 2017 and August 2018, Holmes and others supplied the network "with distribution quantities of cocaine base and cocaine" that were then distributed to a confidential source ("CS"). [*Id*.]. Holmes was responsible for "approximately 392 grams of cocaine base distributed to the CS and supplied [the network] with narcotics [on numerous occasions]." [*Id*.].

On or about August 9, 2018, agents executed a federal search warrant at Holmes' residence and found "one Phoenix Arms .25 caliber semi-automatic pistol; one stolen Taurus .357 caliber

revolver; and several rounds of ammunition." [*Id*. at 3]. "Prior to August 9, 2018, Holmes had been convicted of a felony offense, and ha[d] not had his right to possess a firearm or ammunition restored." [*Id*.].

D) Change of Plea Hearing

Also, on the same day, the District Court held a change-of-plea hearing. [CR-ECF Nos. 89; 235]. Holmes was placed under oath and affirmed that he had discussed the charges in his case with his lawyer and that he was "fully satisfied with [his] counsel, representation, and advice." [CR-ECF No. 235 at 7:2-15]. He also confirmed that he had a full opportunity to review his plea agreement with his lawyer before he signed it and that he understood "each and every term" of the agreement. [*Id*. at 7:16 – 8:7].

The Court informed Holmes that his plea agreement contained a partial waiver of his appeal rights, and he confirmed that the waiver of his right to appeal his sentence and conviction was knowing and voluntary. [*Id*. at 13:5-20]. He affirmed that he understood the terms and conditions of his plea agreement and that no one had threatened, coerced, or forced him in any way to enter a plea of guilty. [*Id*. at 13:17 – 14:8].

Next, the Court emphasized that the "maximum possible penalty" for Count 1 was life in prison with a 10-year minimum mandatory and that Count 17 required a 15-year minimum-mandatory term of imprisonment and carried a maximum term of life imprisonment. [*Id*. at 15:11 – 16:9]. When Holmes was asked if he understood these consequences, he replied, "Yes." [*Id*. at 16:10-13].

Holmes then confirmed that he spoken with his lawyer about how the federal sentencing guidelines would apply in his case. [*Id*. at 16:14-19]. The Court warned Holmes that his sentence could be determined by the Sentencing Guidelines and that the "sentence ultimately imposed could

be different from any estimate [his] lawyer or anyone else may have given [him]." [*Id*. at 16:20 – 17:7].

After the Court reviewed the terms of the plea agreement with Holmes, he pled guilty to Counts 1 and Count 17. [*Id*. at 10:24 – 13:16].

E) <u>Presentence Investigation Report</u>

Before sentencing, U.S. Probation prepared a Presentence Investigation Report (the "PSI"). The PSI set Holmes' base offense level at 30, pursuant to U.S. Sentencing Guidelines Manual ("USSG") § 2D1.1(c)(5), because the offense involved at least the equivalent of 1,000 kilograms of marijuana, but less than 3,000 kilograms. [PSI ¶ 70]. Because of his role in the offense, an enhancement was applied increasing his offense level to 33. [PSI ¶ 74]. Probation also noted that Holmes was an armed career criminal under 18 U.S.C. § 924(e). [PSI ¶ 77].

Additionally, the PSI noted that Holmes was also a career offender under USSG § 4B1.1, because he had a 1991 felony conviction for strong armed robbery, docket number 91-6912CF10A, and a 1991 conviction for aggravated assault with a firearm, docket number 91-14712CF10A. [PSI ¶ 77]. The career offender enhancement increased his guideline offense level to 37. [PSI ¶ 77]. Finally, after a three-point reduction for acceptance of responsibility and assisting authorities in the investigation of his own misconduct, Holmes' total offense level was 34. [PSI ¶¶ 78-80]. The PSI also reported Holmes' other prior adult convictions, including robbery by force, and battery on a law enforcement officer and resisting an officer with violence. [PSI ¶¶ 91, 95].

The PSI noted that because Holmes was an armed career criminal and a career offender, his criminal history category was VI. [PSI ¶¶ 96-97].[3] Because Holmes' total offense level was 34 and he had a criminal history category of VI, his advisory guideline range of imprisonment was

---

[3] According to § 4B1.1(b), a career offender's criminal history in every case is VI. [PSI ¶ 97].

between 262 to 327 months. [PSI ¶ 142].

F) <u>Objections to PSI & Addendum</u>

Attorney Vereen filed several objections to the PSI challenging the guidelines calculations. [CR-ECF No. 125]. Specifically, he stated that the PSI "makes no reference to the criminal history points …[but] instead calculated defendant's total criminal history based on the career criminal/armed career criminal provisions and enhanced defendant's sentence to a level 37 from a 33 and a Criminal History Category VI, from what would have been a Criminal History Category III, resulting in an advisory sentence of 267-327 months incarceration." [*Id*. at 3]. The objection further stated, "[b]ased on the history of the convictions which qualified [Holmes] as either a career offender or armed career criminal [Holmes] lodges his objection and moves [the] Court to rule those provisions inapplicable to the sentence." [*Id*.]. Attorney Vereen, however, requested that the Court sentence Holmes to the 15-year statutory mandatory minimum sentence. [PSI Addendum, p.3].

Probation responded that "[i]t should be noted that Holmes pleaded guilty to 18 U.S.C. § 924(e), which is the armed career criminal enhancement." [PSI Addendum, p.3]. Probation noted that Holmes was a career offender as well because he satisfied all three prongs of USSG § 4B1.1(a), the guideline career offender provision, and once again noted the two predicate offenses (strong arm robbery, docket number 91-5912CF10A and aggravated assault with a firearm, docket number 91-14712CF10A). [*Id*.].

G) *Pro Se* Motions

Several months after entering the guilty plea in open court, on February 21, 2019, Holmes filed a letter claiming that he was coerced by Attorney Vereen into sign the plea agreement, and he sought to withdraw the plea. [CR-ECF Nos. 145]. The Court struck the Motion [CR-ECF No.

147], and Holmes filed a letter/motion requesting to change counsel. [CR-ECF No. 153]. Attorney Weiner filed a notice of appearance on Holmes' behalf stating that the representation was "for sentencing only." [CR-ECF Nos. 158; 159]. Holmes made no further attempt to withdraw the plea.

H) Sentencing Hearing & Judgment

At sentencing, the Court noted that Holmes' advisory guidelines range was "quite high," at 262 to 327 months. [CR ECF No. 236 at 2:23-25]. Nevertheless, the Government recommended that Holmes be sentenced at the bottom of the guidelines, 262 months. [*Id*. at 5:11-13].

Attorney Weiner, however, requested a sentence of 180-months, the statutory mandatory-minimum for Count 17, presenting a number of character witnesses to attest to Holmes' community involvement and support within the community, his "extraordinary" acceptance of responsibility, and noting that his judgment was affected by his severe drug addictions. [*Id*. at 11-14; 16-19]. The Court inquired as to which offenses constituted the qualifying Armed Career Criminal offenses. [*Id*. at 14:22-24]. Probation responded that the offenses were in paragraphs 93 and 94 of the PSI [*Id*. at 15:2-3], which outlined only two of Holmes' prior offenses for which he had served fifteen years in prison and had been released in 2003: Holmes' 1991 conviction for strong-arm robbery and 1991 conviction for aggravated assault with a firearm [PSI ¶¶ 93-94].

The Court inquired as to what Holmes' sentencing guidelines range would be if he were not an Armed Career Criminal [CR-ECF No. 236 at 20:18-20], and Probation indicated that "he would have been a 30, criminal history category 3, which would have been 121 to 151 months." [*Id*. at 21:5-7]. Ultimately, the Court stated that categorizing Holmes as an Armed Career Criminal based on "two ancient convictions, which, frankly, [were] a little marginal in terms of their consistency with the Armed Career Criminal statute . . . unfairly penalize[d] him," and so the Court sentenced Holmes to the statutory mandatory sentence of 180 months. [*Id*. at 21:8-14].

After the sentence was imposed, Holmes' family applauded. [*Id*. at 21:18-20]. The Court noted that was "the first time I've ever had people applaud for a 15-year sentence." [*Id*.]. The Court asked Holmes if there was anything he would like to say before the sentence was imposed and Holmes simply responded, "Thank you, Your Honor." [*Id*. at 21:21-25]. The Court then stated that "180 months [was] sufficient but not greater than necessary to address the nature of the criminal conduct in this case." [*Id*. at 22:7-16]. The Court noted that while Holmes' criminal conduct was "pernicious," and "bad for the community," he was unfairly categorized as an Armed Career Criminal because his prior offenses were "long ago," and he had "stayed out of trouble before he got involved in this case." [*Id*. at 22:7-24].

Finally, the Court informed Holmes that he had "some rights to take an appeal from [his] sentence [and that] the notice of appeal ha[d] to be filed within 14 days of entry of the judgment of conviction and imposing sentence." [*Id*. at 24:18-22]. The Court also informed him that if he could not afford a lawyer to represent him on appeal or could not afford the costs of an appeal, the Court would waive the costs and appoint a lawyer upon the filing of a proper motion. [*Id*. at 24:2-25, 25:1]. Holmes did not appeal.

I) <u>28 U.S.C. § 2255 Motion</u>

On April 15, 2020, just before the expiration of the one-year deadline for filing an action under 28 U.S.C. § 2255 Motion, Holmes filed this motion. [CV-ECF No. 1, 8, 9]. He alleged that sentencing counsel, Diego Weiner, rendered ineffective assistance by failing to file an appeal and failing to object to the ACCA and career offender designation. [*Id*.]. He also claimed that Attorney Vereen rendered ineffective assistance of counsel by failing to inform him of the effect of the recidivism enhancement in the plea agreement. [*Id*.].

The Court appointed counsel for Holmes and held an evidentiary hearing on his claim of

failure to file a direct appeal. [CV-ECF Nos. 10; 44]. The Government filed their answer [CV-ECF No. 23] and the parties' filed pre-trial narratives [CV-ECF Nos. 24; 28].

### III. Standard of Review

A movant is entitled to relief from judgment under 28 U.S.C. § 2255 if judgment was imposed in violation of his constitutional rights. *See* 28 U.S.C. § 2255(a); *see also McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). Relief under § 2255 is also reserved for that narrow compass of other injury that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *See Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted); *see also United States v. Frady*, 456 U.S. 152, 165 (1982). If a court finds a claim under § 2255 valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner, grant a new trial, or correct the sentence." 28 U.S.C. § 2255. The burden of proof is on the movant, not the government, to establish that vacatur of the conviction or sentence is required. *See Beeman v. United States,* 871 F.3d 1215, 1221-1222 (11th Cir. 2017).

### IV. Applicable Law

*Ineffective Assistance of Counsel*

Here, Holmes claims that he is entitled to relief under 28 U.S.C. § 2255 because he was denied effective assistance of counsel under the Sixth Amendment. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test for deciding whether a movant has received ineffective assistance of counsel. The movant must show (1) that counsel's performance failed to meet "an objective standard of reasonableness," *id*. at 688; and (2) that the movant's rights were prejudiced as a result of the attorney's substandard performance. *Gomez-Diaz v. United States*, 433 F.3d 788, 791 (11th Cir. 2005). However, if the movant cannot meet

one of *Strickland's* prongs, the court does not need to address the other prong. *Strickland*, 466 U.S. at 697; *see also Brown v. United States,* 720 F.3d 1316 (11th Cir. 2013).

## V. Evidentiary Hearing (Failure to File Direct Appeal)

A)  Testimony of Ozie Lee Holmes

Holmes testified at the evidentiary hearing regarding the events surrounding his plea agreement, change of plea hearing, and sentencing hearing. He initially hired Attorney Vereen to represent him, but fired him after writing a letter to the district judge explaining that the agreement that he signed in court was not consistent with the proposed plea. Holmes testified that the plea agreement Vereen had presented to him at the jail had a sentencing guideline range "from nine to ten years, with the agreement that the government would not seek any additional enhancements other than a three-point enhancement."

Holmes admitted that at the change-of-plea hearing he acknowledged that he could receive a 15-year minimum-mandatory sentence, but that that no one had explained to him that it was because of the Armed Career Criminal Act. He also testified that no one explained to him that he was "facing 22 to 27 years because of the Career Offender Act." He claimed that he only first learned at the "PSI interview" that the plea agreement he signed had the Armed Career Criminal enhancements. He stated that he wrote the district judge two letters to inform her that he was coerced. According to Holmes, after he became aware of the purported discrepancies in the plea agreement, he made several attempts to contact Attorney Vereen to no avail. He then hired Attorney Weiner to represent him.

Holmes stated that Attorney Weiner came to visit him and told him that there was not much he could do regarding getting his plea withdrawn because "it would cost $40,000." He claimed that Attorney Weiner informed him that for $15,000, it was in his best interest "to just move

forward and try to secure a low-end sentence . . . and then move for a motion to appeal the different arguments" with another attorney. The "different arguments" Holmes referred to were "the enhancements," the "Armed Career Criminal and career offender." Holmes testified that Attorney Weiner "just wanted to secure [him] a low-end sentence so that if [he] did not want to appeal, [he] would still have a low-end sentence."

Holmes claimed that between discharging Attorney Vereen and hiring Attorney Weiner, he learned and told Attorney Weiner that he did not qualify for the "Armed Career Act" because the PSI "failed to list the three predicate priors," and instead listed "only two," the 1991 purse snatching and aggravated assault. Holmes also testified that he informed Attorney Weiner that he also did not qualify for the "Career Offender Act" because the PSI listed two predicate priors that were "time barred." He further stated that he was ultimately sentenced to the 15-year minimum mandatory under the Armed Career Criminal Act, but noted that the district court judge had indicated in her "Statement of Reasons" that he was "unfairly penalized."

Holmes also admitted that, at the sentencing hearing, although he was given the opportunity to speak before his sentence was imposed, he did not. He testified that it was in his "best interest to secure a minimum sentence, . . . which was 15 years," and then appeal and argue the other issues with an attorney he could afford. He stated that his family was happy and applauded at the sentencing hearing because he "signed a plea agreement, unknowingly, to 27 years in prison, and the judge went below that to 15 years."

Holmes also admitted that the judge told him he had "14 days to file an appeal" and that if he could not afford an attorney, one would be appointed for him. He stated, "[t]hat's why Mr. Weiner was supposed to raise the appeal after sentencing because I explained to you, he understood

that if I would secure a low-end sentence then after filing an appeal or whatever, it would be with a lawyer I could afford. It wouldn't be him. That was our agreement."

He admitted that Attorney Weiner came to see him four days after sentencing. However, Holmes testified "I didn't fully recall our conversations because I actually didn't recall that visit but . . . at that point I already had my time in and the Government hadn't returned my vehicle, so I remember that. I remember I wanted him to get my vehicles back." He further testified, "I am not sure as to whether or not we talked about him filing an appeal or not but that was our agreement from the initial hiring of him on the case, that we would file an appeal afterwards."

Holmes sent an email to Attorney Weiner about a month after his sentencing asking about the return of his property, but made no mention of an appeal. Holmes claimed, regarding the May 3, 2019 email[4], that he did not feel he had to mention an appeal in the email because it was the "agreement moving forward" that Attorney Weiner would secure a low-end sentence and then file an appeal.

According to Holmes, he only learned that Attorney Weiner did not file an appeal when he first arrived at prison, and so he filed this § 2255 Motion.

B)  Testimony of Sentencing Counsel for Holmes, Attorney Diego Weiner

Attorney Weiner testified that he was a criminal defense attorney at the Law Offices of Jeffrey S. Weiner, PA. and had practiced for five years as a criminal defense attorney in both state and federal court. The firm had represented about 150 to 300 defendants over a span of five years.

Attorney Weiner testified that his representation of Holmes was "strictly limited to sentencing, not to vacate [Holmes'] plea." When he and Holmes first spoke, Holmes wanted him to vacate the plea and then to potentially proceed to trial. He gave Holmes an estimate of the cost

---

[4] This May 3, 2019 email from Holmes was introduced at the evidentiary hearing as Exhibit 3.

and Holmes chose to proceed with sentencing instead. Attorney Weiner further testified that they did discuss that the firm would file a notice of appeal if asked. He stated that he remembered Holmes expressing concern about "the minimum mandatory in general." He recalled that Holmes was "unhappy" that he had pled guilty to offenses with a ten-year and fifteen-year minimum mandatory sentences.

Attorney Weiner met with Holmes at the Federal Detention Center ("FDC") on March 25, 2019, April 6, 2019,[5] and April 16, 2019. Each time, he sent a courtesy email to make sure that Holmes was available, and an email and a formal letter was sent prior to all three visits.[6]

At the April 6, 2019 meeting before sentencing, he and Holmes "had a lengthy conversation about the previously executed plea agreement, the sentence that [they] had planned on asking for, [and] the minimum mandatory related to his case . . .." Attorney Weiner asserted that he recalled reviewing the Presentence Investigation Report and discussing with Holmes that there was a 15-year minimum mandatory sentence because of the ACCA. He testified that Holmes gave him permission to ask for the "15-year min man" in the sentencing memorandum and in the request to the Court.

Attorney Weiner maintained that Holmes had never asked him to file a notice of appeal at any time during his representation. In fact, Attorney Weiner stated that immediately after sentencing and while in the courtroom, he and Ms. Anabel Nahra and Jeffrey Weiner, attorneys from his law firm present at the sentencing, and Ms. Yisel Villar, a paralegal from the firm, all had a conversation with Holmes explaining to him that 180 months was "the lowest possible sentence."

---

[5] It appears that Attorney Weiner met with Holmes on April 5, 2019, and not on April 6, 2019.

[6] An April 5, 2019 email and an April 16, 2019 letter were entered into evidence as Exhibits 1 and 2, respectively.

Holmes had received the statutory mandatory minimum sentence despite the government's request that Holmes be sentenced to 262 months. Holmes indicated he did not want to appeal.

Attorney Weiner also met with Holmes on April 16, 2019, four days after the sentencing hearing. He testified that the purpose of the meeting was to "make sure that [Holmes] was clear as to his rights to appeal the sentence that had been imposed and what was going to happen next." He explained Holmes' rights to him, and Holmes said that he "understood that he had the lowest possible sentence and specifically told [him] that he would not be appealing."

Attorney Weiner further testified that as trial counsel for Holmes, he was only involved in the sentencing, and that the retainer agreement and conversations he had with Holmes made absolutely clear that representation was limited to sentencing. Nevertheless, he stated that as trial counsel, it is his obligation to file a notice of appeal even if he would not be representing Holmes in the appeal. He stated that had he been asked to file an appeal he would have done so.

Attorney Weiner also discussed his policy regarding filing appeals. Attorney Weiner testified that he had, on many occasions, filed an appeal for a client who asked for one even though he had not been retained for that purpose. He also stated that in the span of five years there have been cases where the firm filed a notice of appeal knowing that the client was going to have another private lawyer or an appointed lawyer.

During cross-examination, Attorney Weiner testified that he did not document Holmes' decision not to file an appeal because at sentencing "there were three lawyers and paralegals that explained that right to him and then later met with him in person. We had multiple conversations, so I didn't feel it was necessary in this case. . . ."

On direct examination, in reference to Holmes' § 2255 Motion in which Holmes claimed that a couple of days after sentencing, he attempted to contact Attorney Weiner by telephone and

wrote a letter explaining his desire to appeal, Attorney Weiner testified that he never received a letter or phone call to that effect. In fact, on May 3, 2019, he received an email via Corrlinks in which Holmes emphasized that he understood the representation was over but would appreciate if the firm kept in touch with his daughter to get his vehicles back. Attorney Weiner testified that he was in touch with Holmes and did not recall a request for an appeal ever being received.

Holmes' counsel at the evidentiary hearing questioned Attorney Weiner about a February 26, 2020 letter he sent to Holmes.[7] Attorney Weiner recalled Holmes contacted him around January 2020, inquiring about a "postconviction motion related to the First Step Act." They had many conversations about such, but he concluded there was no basis for a postconviction motion related to the First Step Act at that time. The February 26, 2020 letter addressed both Holmes concerns about whether his "predicate priors qualif[ed] him for a 180-month minimum mandatory sentence . . . pursuant to 18 U.S.C. 924(e)" and whether the First Step Act of 2018 granted him relief from his sentence. Attorney Weiner could not recall why the letter also discussed the Armed Career Criminal Act but speculated that Holmes must have asked for the information. The Government emphasized that the letter did not discuss or refer to an appeal.

The February 26, 2020, letter was sent to Holmes about six-weeks before he filed his § 2255 Motion raising the ACCA and career offender issues.

## VI. Discussion

A) <u>Claim 1: Ineffective assistance of Sentencing Counsel, Diego Weiner, for Failing to File a Direct Appeal</u>

In his § 2255 motion, Holmes claims that Attorney Weiner was constitutionally ineffective because he failed to file a notice of appeal as requested. [CV-ECF No. 24 at 3]. "An attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally

---

[7] This February 26, 2020 correspondence from Attorney Weiner was entered into evidence as Exhibit 4.

unreasonable manner per se." *Gomez-Diaz v. United States*, 433 F.3d 788, 791–92 (11th Cir. 2005) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)). "At the other end of the spectrum, a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Flores-Ortega*, 528 U.S. at 477 (citation omitted). Here, the question before the Court is whether Holmes requested that Attorney Weiner file an appeal on his behalf. This requires a credibility determination by the Court.

Credibility determinations of witness testimony in a § 2255 proceeding are generally made by "weigh[ing] the testimony of all of the witnesses, taking into account relevant factors such as their interests in the case, the consistency or inconsistency of their testimony, and their demeanor on the stand[.]" *See Rizo v. United States*, 662 F. App'x 901, 912 (11th Cir. 2016) (per curiam) (citing *United States v. Ramirez-Chilel*, 289 F.3d 744, 750 (11th Cir. 2002)); *see also Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985) (stating that demeanor, vocal inflection, the consistency or inconsistency of testimony, and the internal plausibility or implausibility of testimony are relevant considerations when determining witness credibility).

Specifically, Holmes testified that he and Attorney Weiner agreed from the outset that Attorney Weiner would "attempt to secure a low-end sentence" and then "just file an appeal and if the appeal came through" Holmes could "file from there." At the same time, Holmes testified that Attorney Weiner "just wanted to secure [him] a low-end sentence so that if [he] did not want to appeal, [he] would still have a low-end sentence." Holmes did not once testify that he asked Attorney Weiner to file an appeal at any time after sentencing. In fact, Holmes testified that he did not remember what he and Attorney Weiner discussed when Attorney Weiner went to see him four days after sentencing, and that he admittedly did not remember if they discussed filing an appeal.

At best, Holmes simply contends that he had hired Attorney Weiner to file a notice of appeal at the outset of the representation and expected that he would do so after sentencing.

In contrast, Attorney Weiner stated that Holmes never told him to appeal and instead, after sentencing, explicitly told him not to file a direct appeal. Attorney Weiner's testimony was consistent, detailed, and appears plausible. The Government requested that Holmes be sentenced to 262 months' imprisonment, but Holmes received the statutory mandatory-minimum sentence of 180-months, well below his guideline range. Holmes' family applauded after he was sentenced, indicating that they were pleased with the sentence he received.

Furthermore, Attorney Weiner stated that immediately after sentencing, he and two other attorneys and a paralegal were all present and explained to Holmes that he had received the lowest possible sentence. There is no dispute that not once during that time did Holmes ask Attorney Weiner to file an appeal. Attorney Weiner testified that when he went to see Holmes four days after the sentencing hearing on April 16, 2019, he spoke with Holmes about his right to appeal, and Holmes understood that he had received the lowest possible sentence. Holmes, in fact, told him that he did not want to appeal. Further, Attorney Weiner testified that he did not document Holmes' decision not to file an appeal because at sentencing "there were three lawyers and paralegals that explained that right to him and then he later met with him in person." He did not think it was necessary.

Finally, Attorney Weiner stated that he discussed everything with Holmes, including his plea agreement and the PSI, and that it was his opinion that there was no basis for an appeal. However, had Holmes asked him to file an appeal he would have done so. Attorney Weiner testified that Holmes never once asked him to file a notice of appeal either at the outset of his

representation, directly after sentencing, four days later when he visited Holmes, or any time thereafter.

Despite communicating with Attorney Weiner both before and on several occasions after sentencing, Holmes has not produced any correspondence or evidence showing that he requested his counsel to file a notice of appeal. Moreover, Holmes was informed at sentencing by the Court that he had a 14-day window for filing an appeal and that the court could appoint counsel to represent him on appeal, yet never requested appointment of appellate counsel. Holmes' habeas counsel argued at the evidentiary hearing that Holmes read a book while in the Federal Detention Center which alerted him to the fact that the Armed Career Criminal Act requires three qualifying convictions but that his PSI only referred to two. He does not explain, however, why Holmes did not request that Attorney Weiner file a notice of appeal or why Holmes did not at least request the appointment of appellate counsel post-sentencing to pursue the purported appeal on his behalf.

Conclusively, the Undersigned finds that Holmes has not sustained his burden of demonstrating by a preponderance of the evidence that counsel was ineffective for failing to file a notice of appeal. Therefore, Holmes' claim that Attorney Weiner was ineffective for failing to file a notice of appeal is without merit.

B) Claims 2: Ineffective Assistance of Counsel for Failure to Object to Designation in PSI

Claim 2 is the core of Holmes' concern in this case. In Claim 2, Holmes contends that his sentencing counsel was ineffective for failing to argue that his ACCA enhancement was invalid. [ECF No. 8 at 4-9]. He asserts that the PSI did not rely on three qualifying prior convictions for ACCA purposes, and instead only relied on two, his 1991 convictions for strong-arm robbery and aggravated assault with a firearm. [*Id.*]. He argues that his other prior convictions, although listed in the criminal history section of his PSI, should not be used to support the ACCA enhancement

because he "did not have adequate notice that additional convictions would be used to support his ACCA sentence enhancement." [*Id*. at 5].

A defendant qualifies for an armed career criminal enhancement if he violates 18 U.S.C. § 922(g) and has three prior convictions for a violent felony or a serious drug offense. 18 U.S.C. § 924(e)(1); *see also United States v. Joyner*, 882 F.3d 1369, 1377 (11th Cir. 2018).  A "violent felony" includes "any crime punishable by imprisonment for a term exceeding one year" that:

(i)   has as an element the use, attempted use, or threatened use of physical force against the person of another [the use-of-force clause]; or

(ii)  is burglary, arson, or extortion, involves use of explosives [the enumerated offenses clause], or otherwise involves conduct that presents a serious potential risk of physical injury to another [the residual clause].

18 U.S.C. § 924(e)(2)(B).[8]

Holmes' prior Florida convictions for strong-arm robbery and aggravated assault with a firearm, as listed in the PSI, are categorically crimes of violence under the ACCA's elements clause. *See Turner v. Warden Coleman FCI (Medium)*, 709 F.3d 1328, 1337–38 (11th Cir. 2013) (Florida aggravated assault categorically qualifies as a "violent felony" under the ACCA); *United States v. Seabrooks*, 839 F.3d 1326, 1338 (11th Cir. 2016) (holding that Florida robbery convictions qualify as "violent felonies" under the elements clause of the ACCA); *Stokeling v. United States*, 139 S. Ct. 544, 555 (2019) (holding that Florida robbery categorically qualifies as a "violent felony" under the elements  clause of the ACCA).

The PSI also reported two other convictions that qualified as violent felonies under the ACCA. [PSI ¶¶ 91, 93, 95]. The PSI noted that in 1991, Holmes was convicted of Florida robbery

---

[8] In *Johnson v. United States*, 576 U.S. 591, 594 (2015), the Supreme Court held that the residual clause in subsection (ii) was unconstitutionally vague and that increasing a defendant's sentence under the clause was a denial of due process. As will be explained in this Report, Holmes had four prior convictions that were not affected by the ruling in *Johnson*.

by force in Docket Number F91-4036A, in circumstances separate from those that led to his other 1991 robbery conviction in Docket Number 91-5912CF10A. This other 1991 Florida robbery by force qualifies as a valid predicate under the ACCA. *See* [PSI ¶ 91]; *see also United States v. Lockley*, 632 F.3d 1238, 1241–45 (11th Cir. 2011). The PSI also noted that in 1997, Holmes was convicted of resisting an officer with violence in Docket Number 97-CF-000111, which also qualifies as a "crime of violence" under the elements clause of the ACCA. *See* [PSI ¶ 95]; *see also United States v. Marius*, 678 F. App'x 960, 963 (11th Cir. 2017) (holding that a Florida conviction for resisting an officer with violence categorically qualifies as a "crime of violence" under the elements clause of the Guidelines); *United States v. Romo-Villalobos*, 674 F.3d 1246, 1251 (11th Cir. 2012) (holding that a Florida conviction for resisting an officer with violence, in violation of Florida Statute § 843.01, categorically qualifies as a "crime of violence" under the elements clause of the Guidelines).

While Attorney Vereen may have challenged whether the age of his prior convictions warranted the application of the enhancement provisions of the ACCA and the Career Offender Act in determining his guideline range, neither Holmes nor his counsel ever challenged the validity of any of the convictions in the PSI. Holmes here challenges Probations' and the government's failure to specify which of his prior convictions constitute the qualifying convictions for the ACCA enhancement. After a careful review of the record, the Court finds that it is true that the government and the probation officer never specifically identified which of the convictions in the PSI are the three ACCA qualifying convictions.  In fact, in response to the Court's question at sentencing asking for clarification as to the qualifying convictions, Probation identified only two in paragraphs 93 and 94 of the PSI. [CR-ECF No. 20:14]. No mention was made of paragraphs 91 and 95, both of which are also qualifying convictions.

21

In this Circuit "there is no requirement that the government prospectively address whether each and every conviction listed in the criminal history section of a PSI is an ACCA predicate in order to guard against potential future changes in the law and avoid later claims that it has waived use of those convictions as qualifying ACCA predicates." *Tribue v. United States*, 929 F.3d 1326, 1332 (11th Cir. 2019). Thus, although neither the PSI nor the parties denominated the specific offenses that qualified Holmes as an Armed Career Criminal, the PSI did report at least four qualifying convictions. Putting aside the fact that Holmes admitted that he was guilty of violating the ACCA, at least in this Circuit the failure to specify the qualifying offenses in the PSI does not invalidate his conviction. As such, his attorney could not have been ineffective for failing to raise a meritless argument. *See Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001).

Holmes relies on the Fourth Circuit Court of Appeal's opinion in *United States v. Hodge*, 902 F.3d 420, 427 (4th Cir. 2018), to contend that his ACCA enhancement was invalid. The Fourth Circuit held that when one of the convictions used to support the defendant's ACCA enhancement was invalidated, the government could not on collateral review identify other convictions to sustain the enhancement because "it would unfairly deprive petitioner[s] of an adequate opportunity to respond." *Id*. *Hodge* requires the government to identify all convictions it uses to support the ACCA enhancement at the time of sentencing. *Id*. at 429. The appellate court on habeas review vacated the judgment and remanded the case a new sentencing. *Id*. at 432.

Interestingly, *Hodge* relies upon Eleventh Circuit decisions for support for its conclusion but in *Tribue*, this Circuit distinguished and limited those cases to instances where the defendant has objected to the ACCA classification at sentencing, initiating the court's review of the prior convictions. *Tribue*, 929 F.3d at 133-34. It makes sense that the defendant cannot claim on habeas review unfair surprise that the government has relied upon other convictions when the defendant

22

never challenged the fact that *any* of his convictions qualified him for the enhancement. Here, Holmes did not argue that his convictions did not qualify under the ACCA. And, equally important, even now, contrary to the defendant in *Hodges*, he cannot establish that any of his prior convictions would disqualify him for the enhancement. Thus, he cannot establish prejudice.

Conclusively, even if sentencing counsel had objected to Holmes' ACCA enhancement at sentencing, Holmes cannot show prejudice and that the outcome of his proceeding would have been different. Holmes pled guilty to 18 U.S.C. § 924(e), and as noted, he was correctly convicted as an armed career criminal because he had four qualifying prior convictions. Therefore, Movant's claim is without merit.

C) Ineffective Assistance of Sentencing Counsel for Failing to Object to the Career Offender Designation in the PSI

In Claim 3, Holmes contends that sentencing counsel was ineffective for failing to object to the use of the two predicates offenses that designated him as a career offender under the sentencing guidelines. [ECF No. 8 at 16]. Holmes asserts that he informed sentencing counsel that his two prior felony convictions were over 15 years old and expired in the year 2000, and therefore, could not be used as predicates. [*Id.*].

First, Holmes' was not sentenced as a career offender because the Court chose to disregard the 262-327 months guidelines recommendation, and instead sentenced him to the 15-year minimum-mandatory under the ACCA. Thus, this claim should be denied.

In any event, Holmes' guideline sentence was properly calculated. Under the Guidelines, "[a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance

offense." USSG § 4B1.1(a). "Section 4B1.2(a) [of the Guidelines] defines a 'crime of violence' as a felony that: (1) has as an element the use, attempted use, or threatened use of physical force (the elements clause); (2) is specifically enumerated as a crime of violence within the guideline (the enumerated offenses clause); or (3) otherwise involves conduct that presents a serious potential risk of physical injury to another (the residual clause)." *United States v. Jenkins*, 651 F. App'x 920, 924 (11th Cir. 2016).

Here, the PSI relied on at least two 1991 felony "crimes of violence" convictions as qualifying career offender predicates under the Guidelines. [PSI ¶¶ 77, 93-94]. As a basis for his career offender designation, the PSI cited Holmes' state court convictions in 1991, for strong-arm robbery, docket number 91-5912CF10A, and aggravated assault with a firearm, docket number 91-14712CF10A. [*Id.*]. Holmes' prior Florida convictions for strong-arm robbery and aggravated assault with a firearm are categorically crimes of violence under the elements clause of the Guidelines.[9] *See Turner v. Warden Coleman FCI (Medium)*, 709 F.3d 1328, 1337–38 (11th Cir. 2013); *see also United States v. Lockley*, 632 F.3d 1238, 1241–45 (11th Cir. 2011) (holding that Florida attempted robbery qualifies as a "crime of violence" under the enumerated offenses and elements clauses of the Guidelines).

Further, for career offender purposes, a prior conviction resulting in "[a]ny prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also counted is any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the

---

[9] Because the definition of "violent felony" under the ACCA is "virtually identical" to the definition of "crime of violence" for purposes of the career offender enhancement, "decisions about one apply to the other." *Gilbert v. United States*, 640 F.3d 1293, 1309 n.16 (11th Cir. 2011).

defendant being incarcerated during any part of such fifteen-year period." USSG § 4A1.2(e)(1)); *see also United States v. Garcia*, 735 F. App'x 621, 625 (11th Cir. 2018).

The circumstances surrounding the instant offense of conviction, (Count One) – conspiracy to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841 and 846, began in June 2017. [PSI ¶¶ 8–10]. As such, in this case, the fifteen-year period for prior convictions for career offender purposes extends back to June 2002. *See* USSG § 4A1.2(e)(1)). Holmes was imprisoned on both his aggravated assault with a firearm and strong-arm robbery convictions until October 5, 2003. [PSI ¶¶ 93-94]. Because Holmes' imprisonment for his convictions fell within the 15-year period as described by USSG § 4A1.2(e)(1)), these convictions relied upon to designate Holmes as a career offender are valid predicates. Therefore, Holmes' claim that counsel was ineffective for failing to object to the predicate offenses used to designate him a career offender is without merit.

D) Claim 4: Ineffective Assistance of Guilty Plea Counsel Vereen for Failing to Inform Holmes that the Alleged "Second Plea" Offer would Expose him to a Greater Sentence than the Supposed "First"

Holmes claims that the plea agreement he signed was not the first plea offer he received. [CV-ECF No. 9 at 7]. He asserts that the first plea offer was provided by the "U.S. Attorney" and contained an offer for a nine or ten-year sentence without any enhancements, and that he signed this plea agreement in the presence of Attorney Vereen. [*Id.*].

Holmes claims that on December 20, 2018, he met with Attorney Vereen in the interview room at the courthouse about ten minutes before his change-of-plea hearing, and that at this time, Attorney Vereen brought a second plea agreement. [*Id.*]. He argues that Attorney Vereen told him that it was the same plea agreement he had signed before and that if he did not sign it the prosecutor would withdraw his motion for bond reduction. [*Id.*]. He asserts that when he met with Probation

in January 2019, he learned that the plea agreement he signed was not the same as the purported first agreement. [*Id.*]. He claims that the first agreement contained a guideline sentence range of 121-151 and did not include "any" recidivism enhancements. [*Id.*]. In summary, Holmes claims that his guilty plea/trial counsel, Attorney Vereen, was ineffective for failing to inform him that his second plea agreement did not have a ten-year sentence as was purportedly stipulated to in the first plea offer. [*Id.*].

Where a petitioner claims that counsel's deficient performance caused him to plead guilty, prejudice is established if the petitioner "show[s] that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017). "Courts should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Dodd v. United States*, 709 F. App'x 593, 594–95 (11th Cir. 2017) (citing *Lee*, 137 S. Ct. at 1967).

Further, a defendant's statements under oath at a plea hearing give rise to a presumption that the plea is constitutionally adequate. *See Downs-Morgan*, 765 F.2d at 1541 n.14 (citing *Blackledge v. Allison*, 431 U.S. 63, 74–75 (1977)). Courts apply a "strong presumption" that statements made by a defendant during a change of plea colloquy are true. "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988). Thus, even when a defendant argues that he received promises or assurances from an attorney which induced him to plead guilty and later proved to be erroneous, a defendant's statements under oath at a plea colloquy that he received no such promises or assurances cures the potential prejudice. *See Stillwell v. United States*, 709 F. Appx. 585, 590 (11th Cir. 2017); *see also Lee*, 137 S. Ct. 1698

n.4 (noting that "[s]everal courts have noted that a judge's warnings at a plea colloquy may undermine a claim that the defendant was prejudiced by his attorney's misadvice").

Holmes' claim poses several problems. First, Holmes has presented no evidence that there was a prior plea agreement. Next, Holmes' claim is completely contradicted by his sworn statements at the change-of-plea-hearing. During the hearing, Holmes was placed under oath and admitted that he was fully satisfied with his counsel, the representation he received, and the advice that he received from Attorney Vereen. [CR-ECF No. 235 at 7:10-15]. He also conceded that he had a full opportunity to review his plea agreement with his lawyer before he signed it. [*Id*. at 7:16 – 8:7]. The Court made a point to emphasize that as to Count 17, the Court was required to impose a 15-year minimum mandatory with a maximum of life and that the Court had the statutory authority to impose any sentence up to the statutory maximum. [*Id*. at 11:17-20, 15:11 – 16:9].

Holmes also responded in the affirmative when asked if he and his attorney had discussed how the federal sentencing guidelines would apply and the Court stated that the sentence ultimately imposed could be different from any estimate Holmes' lawyer or anyone else may have given him. [*Id*. at 16:14-19]. The Court also stated that if the sentence was more severe than expected, Holmes would still be bound by his guilty plea and unable to withdraw it. [*Id*. at 17:5-13]. Finally, the Court asked Holmes whether there was anything about the terms or conditions of his plea that he did not understand, or whether anyone had threatened, coerced, or forced him in any way to enter his plea agreement. [*Id*. at 13:17 – 14:8]. Holmes replied, "No." [*Id*.].

Nearly two months after the change-of-plea hearing, Holmes wrote a letter to the court requesting to withdraw his guilty plea and change counsel alleging "coercion by counsel to sign plea agreement (5) minutes before entering plea without reading or review the details" because his counsel had warned him that the court may not allow him to be released on bond pending if the

change-of-plea hearing did not proceed. [CR-ECF No. 145]. Holmes made clear in his handwritten letter that he did not want to proceed to trial but wanted a "fair plea agreement that will be negotiated in good faith." [*Id*.].

After obtaining new counsel, however, Holmes chose not to withdraw the plea and proceed to trial. Instead, he chose to maintain the guilty plea and proceed to sentencing. Holmes cannot have it both ways. Interestingly, when given an opportunity to withdraw the guilty plea with new counsel, he chose not to pursue that strategy. Thus, even if he could establish that Attorney Vereen advised him to sign the plea agreement under circumstances that would constitute coercion, Holmes has not shown any prejudice. Holmes has made no showing that he would not have pled guilty and instead would have gone to trial. Holmes ineffective assistance of counsel claim for Attorney Vereen is without merit.

## VII. Evidentiary Hearing (Claims 2, 3, & 4)

Movant is not entitled to an evidentiary hearing on claims two, three, and four. "[T]he motion and the files and records of the case conclusively show that [movant] is entitled to no relief[.]" *See* 28 U.S.C. § 2255(b). In short, the preceding discussion conclusively shows that movant's claims are "patently frivolous" and "affirmatively contradicted by the record." *See Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989).

## VIII. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. "A   certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Here, for the reasons outlined in this Report, the

undersigned recommends that a certificate of appealability be denied. If movant disagrees, he may so argue in any objections filed with the district court.

### IX. Recommendations

Based on the foregoing, it is **RECOMMENDED** that Movant's Amended Motion to Vacate pursuant to 28 U.S.C. § 2255 [CV-ECF No. 8] be **DENIED** on the merits. It is further recommended that no certificate of appealability issue; final judgment be entered; and this case be **CLOSED**.

Objections to this report may be filed with the district judge within fourteen days of receipt of a copy of the report. Failure to file timely objections shall bar movant from a *de novo* determination by the district judge of an issue covered in this report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district judge except upon grounds of plain error or manifest injustice. *See* 28 U.S.C. § 636(b)(1); *Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

SIGNED this 13th day of October, 2021.

_____
LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

Cc: **All Counsel of Record**